IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel., RICHARD DOUGHTY,<br><br>        Plaintiff-Relators,<br><br>v.<br><br>OREGON HEALTH AND SCIENCES<br>UNIVERSITY,<br><br>        Defendant. | 3:13-CV-01306-BR<br><br>OPINION AND ORDER |

**BILLY J. WILLIAMS**
United States Attorney
**NEIL J. EVANS**
**ALEXIS LIEN**
Assistant United States Attorneys
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204
(503) 727-1000

        Attorneys for Plaintiff

**SHELLEY D. RUSSELL**
Crispin Employment Lawyers
1834 S.W. 58th Avenue
Suite 200
Portland, OR 97221-1455
(503) 293-5767

1 - OPINION AND ORDER

**ELIZABETH FARRELL**
0324 S.W. Abernethy Street
Portland, OR 97239
(503) 277-2087

    Attorneys for Relator

**ROBERT C. WEAVER, JR.**
**JOY ELLIS**
**PATRICK J. CONTI**
Garvey Schubert Barer
121 S.W. Morrison Street
11th Floor
Portland, OR 97204
(503) 228-3939

**MICHAEL J. VERNICK**
**JESSICA L. ELLSWORTH**
**MARTA A. THOMPSON**
**MORGAN L. GOODSPEED**
Hogan Lovells US LLP
555 13th Street N.W.
Washington, DC 20004
(202) 637-5878

    Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#54) to Dismiss. The Court concludes the record is sufficiently developed that oral argument on the pending Motion is not warranted. For the reasons that follow, the Court **GRANTS** Defendant's Motion and **GRANTS** Plaintiff-Relators leave to file an Amended Complaint to the extent that they can allege claims for unjust enrichment and/or payment by mistake that do not arise from the express contracts at issue.

## BACKGROUND

On July 30, 2013, Relator Richard Doughty filed a *qui tam* action pursuant to 31 U.S.C. § 3729 against Defendant Oregon Health and Sciences University (OHSU) alleging Defendant violated the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1) and (a)(2), when it applied improper reimbursement rates to certain federally-sponsored projects.

On October 18, 2016, the United States elected to intervene in this matter.

On October 28, 2016, the United States filed a Complaint in Intervention alleging three claims for violation of the FCA, a claim for payment by mistake, and a claim for unjust enrichment relating to Defendant's application of improper reimbursement rates to certain federally-sponsored projects.

On January 17, 2017, Defendant filed a Motion to Dismiss on the grounds that OHSU is an arm of the State and, as such, is not a "person" subject to liability under the FCA and that Plaintiff-Relators' implied-contract claims are barred by their express contract claims.

The Court took Defendant's Motion under advisement on March 1, 2017.

## STANDARDS

### I. Dismissal for Lack of Jurisdiction Pursuant to Rule 12(b)(1)

Plaintiff has the burden to establish that the court has subject-matter jurisdiction. *Robinson v. Geithner*, 359 F. App'x 726, 728 (9th cir. 2009). *See also Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the plaintiff's jurisdictional allegations. *Rivas v. Napolitano*, 714 F.3d 1108, 1114 n.1 (9th Cir. 2013). The court may permit discovery to determine whether it has jurisdiction. *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). When a defendant's motion to dismiss for lack of jurisdiction "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)(citation omitted).

### II. Dismissal for Failure to State a Claim Pursuant to Rule 12(b)(6)

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955 [(2007)]. A claim has facial plausibility when

4 - OPINION AND ORDER

> the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that
> the defendant is liable for the misconduct
> alleged. *Id.* at 556. . . . The plausibility
> standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> *Ibid.* Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'" *Id.*
> at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Novak v. U.S.*, 795 F.3d 1012, 1017 (9th Cir. 2015).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).

## DISCUSSION

### I. Plaintiff-Relators' FCA Claims

As noted, Defendant moves to dismiss Plaintiff-Relators' FCA

claims on the ground that Defendant is an arm of the state and, as such, it is not a "person" subject to FCA liability.

Plaintiff-Relators, in turn, assert Defendant is not an arm of the state and even if it is, the United States may bring FCA actions against states and arms of the state.

The FCA provides in pertinent part that "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . is liable to the United States Government." 31 U.S.C. § 3729(a). The FCA defines a claim in relevant part as

> any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--
>
> (i) is presented to an officer, employee, or agent of the United States; or
>
> (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest.

31 U.S.C. § 3729(b)(2). The FCA authorizes a private person (a relator) to bring a *qui tam* civil action "for a violation of section 3729 for the person and for the United States Government . . . in the name of the Government." 31 U.S.C. § 3730(b)(1).

In *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000), the Supreme Court addressed whether a state or a state agency is a person within the meaning of the

FCA. In *Stevens* the relator brought a *qui tam* action against the Vermont Agency of Natural Resources (VANR) alleging VANR had submitted false claims to the Environmental Protection Agency. The United States declined to intervene in the action. VANR moved to dismiss the action on the ground that VANR, a state agency, was not a person subject to liability under the FCA. The district court denied the motion. The Second Circuit affirmed. The Supreme Court accepted *certiorari*, reversed the Second Circuit, and concluded the FCA "does not subject a State (or state agency) to liability in [FCA] actions." *Id.* at 787. In reaching its conclusion the Supreme Court "appl[ied] to [§ 3729(a) its] longstanding interpretive presumption that 'person' does not include the sovereign." *Id.* at 780 (citations omitted). The Court noted "the FCA was enacted . . . with the principal goal of stopping the massive frauds perpetrated by large [private] contractors during the Civil War. Its liability provision — the precursor to today's § 3729(a) — bore no indication that States were subject to its penalties." *Id.* at 781-82 (quotation and citations omitted). The Court acknowledged the liability provision of the original FCA "has undergone various changes" but noted those changes do not "suggest[] a broadening of the term 'person' to include States." *Id.* at 782. The Court also examined "[s]everal features of the current statutory scheme" and concluded those features "further support

7 - OPINION AND ORDER

the conclusion that States are not subject to *qui tam* liability." *Id.* at 783. Accordingly, the Supreme Court has made clear that the term "person" in the FCA does not include states or arms of the state.

**A. Defendant is an arm of the state.**

As noted, Defendant asserts it is an arm of the state and, as such, is not subject to the FCA. Although Plaintiff-Relators assert Defendant is not an arm of the state, they do not cite any Ninth Circuit cases in which a court has held Defendant or any other Oregon state university is not an arm of the state.

The Court notes Defendant is a public corporation created by the State of Oregon and defined by the Oregon Legislature as a governmental entity. *See* Or. Rev. Stat. § 353.020 ("The university shall be a governmental entity performing governmental functions and exercising governmental powers.").

The Ninth Circuit's test for whether an entity is an arm of the state for FCA purposes mirrors the test for whether an entity is entitled to sovereign immunity under the Eleventh Amendment. *See Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1122 (9th Cir. 2007)("To effectuate Congress's presumed intent, we must interpret the term 'person' under § 3729 in a way that avoids suits against 'state instrumentalities' that are effectively arms of the state immune from suit under the

8 - OPINION AND ORDER

Eleventh Amendment."). *See also U.S. ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1147 (9th Cir. 2004) ("The arm-of-the-state test for sovereign immunity is used to determine immunity from a wide variety of claims and is the proper analysis to be undertaken when determining immunity under the FCA.").

Under the arm-of-the-state test the court examines the following factors:

> (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs central governmental functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power to take property in its own name or only in the name of the state; and (5) the corporate status of the entity.

*Ali*, 355 F.3d at 1147 (citation omitted). Every court that has addressed the issue and conducted an arm-of-the-state analysis has concluded OHSU is an arm of the State of Oregon entitled to Eleventh Amendment immunity. *See, e.g., Kessler v. Or. Health & Sci. Univ.*, No. 1:13-1022, 2013 WL 5819030, at *2 (D. Or. Oct. 29, 2013)("The Court . . . finds that OHSU is an instrumentality of the state for purposes of sovereign immunity. . . . Thus, OHSU is protected from this suit [by] the Eleventh Amendment."); *Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 165 (W.D.N.Y. 1997)("The court . . . finds [OHSU] is an arm or instrumentality of the state of Oregon, entitled to Eleventh Amendment protection."). In addition, courts have concluded OHSU

9 - OPINION AND ORDER

is entitled to state sovereign immunity because it is an arm of the state. *See, e.g., Horton v. Or. Health & Sci. Univ.*, 359 Or. 168, 221 (2016)("OHSU is an arm of the state and, for that reason, may invoke the doctrine of sovereign immunity."); *Thomas v. Mettie*, No. 3:14-554, 2015 WL 667629, at *3 & n.3 (D. Or. Feb. 17, 2015)("Because the pleadings of *pro se* litigants are to be construed liberally, this Court could substitute OSU or OHSU as defendants. Even if this Court were to do so, however, both entities are entitled to state sovereign immunity, and sovereign immunity is not abrogated in federal court for claims seeking money damages under Title I of the ADA."); *Clarke v. Or. Health Scis. Univ.*, 343 Or. 581, 610 (2007)(OHSU is entitled to state sovereign immunity).

Although the question of state sovereign immunity differs from the question whether an entity is an arm of the state for Eleventh Amendment purposes, the Ninth Circuit has explained courts "must examine [the arm-of-the-state] factors in light of the way [state] law treats the governmental [entity]" when evaluating whether an entity is an arm of the state for Eleventh Amendment purposes. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992). In *Clarke* the Oregon Supreme Court concluded in its evaluation of state sovereign immunity that OHSU is charged with and performs state functions, exercises governmental powers, is subject at least in part to the

10 - OPINION AND ORDER

control of the state, has only such powers and duties as the state entrusts to it by statute, and has a governance structure that makes it accountable to the state government. The court's conclusions shed light on the nature of how Oregon courts treat OHSU.

This Court adopts the analysis and reasoning of *Kessler*, *Daniel*, *Thomas*, and *Horton*. Accordingly, the Court concludes Defendant is an arm of the state and, as such, is not a "person" within the meaning of the FCA.

**B. The United States may not bring an FCA action against Defendant.**

Plaintiff-Relators assert even if Defendant is an arm of the state, the United States may, nevertheless, bring an FCA action against Defendant because the holding in *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens* applies only to FCA cases brought by private individuals. Plaintiff-Relators rely on Justice Ginsberg's concurring opinion in *Stevens* to support their assertion. As noted, Justice Ginsberg's concurrence is not the opinion of the majority in *Stevens*. This Court, however, is required to follow the majority opinion in *Stevens*, which does not support Plaintiff-Relators' assertion.

In *Stevens* the United States declined to intervene in the *qui tam* action. The Supreme Court's analysis of the FCA's application to the state agency did not hinge on the fact that

11 - OPINION AND ORDER

the FCA action was brought by a private individual.  As noted, the majority "appl[ied] to [§ 3729(a) its] longstanding interpretive presumption that 'person' does not include the sovereign."  *Id.* at 780 (citations omitted).  The Court observed "the FCA was enacted . . . with the principal goal of stopping the massive frauds perpetrated by large [private] contractors during the Civil War.  Its liability provision — the precursor to today's § 3729(a) — bore no indication that States were subject to its penalties."  *Id.* at 781-82 (quotation and citations omitted).  The Court acknowledged the liability provision of the original FCA "has undergone various changes," but it found those changes do not "suggest[] a broadening of the term 'person' to include States."  *Id.* at 782.  The Court also examined "[s]everal features of the current statutory scheme" and concluded those features "further support the conclusion that States are not subject to *qui tam* liability."  *Id.* at 783.  The Court stated "various features of the FCA, both as originally enacted and as amended, far from providing the requisite affirmative indications that the term 'person' included States for purposes of *qui tam* liability, indicate quite the contrary."  *Id.* at 787.  There is not any indication that the Court's analysis or conclusion would have differed if the United States had intervened in the matter.

In addition, although the Ninth Circuit has not directly addressed this issue, it has indicated it would not

interpret *Stevens* to permit FCA actions by the United States against arms of the state. *See, e.g., Donald v. Univ. of Cal. Bd. of Regents*, 329 F.3d 1040, 1042 n.3 (9th Cir. 2003)("While it is undisputed that private individuals cannot bring *qui tam* suits against state entities under the FCA after *Stevens*, it is somewhat unclear whether suits brought by the United States are barred. Nothing in the Court's opinion [in *Stevens*] purports to limit its scope solely to *qui tam* suits brought by private parties.").

The Court notes the *Stevens* Court does not suggest its outcome would differ if the United States had intervened in that matter as it did here. The Court, therefore, concludes the United States may not bring an FCA action against an arm of the state such as Defendant.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff-Relators' FCA claims.

## II. Plaintiff-Relators' Quasi-Contract Claims

Plaintiff-Relators assert their Fourth and Fifth Claims in "the alternative, and without waiving rights under the [FCA]." Compl. at ¶¶ 94, 100.

Plaintiff-Relators assert the following in their Fourth Claim for payment by mistake:

> In seeking and receiving indirect cost
> reimbursements for the at-issue . . . grants that
> were calculated based on the improper application

13 - OPINION AND ORDER

> of the ONPRC F&A Rate; by improperly charging
> costs for the non-ONPRC programs portion of
> Building #637 to the ONPRC P51 grant . . . ; and
> by charging an OCA to the ONPRC, the Government
> made payments to OHSU based on a mistaken and
> erroneous understanding that OHSU was entitled to
> those funds.
>
> This erroneous belief was material to the
> Government's calculation of the amount of federal
> grant funds to be paid to OHSU. If the Government
> had known that it was being charged by OHSU more
> than it was entitled to, it would not have paid
> those funds to OHSU.

Compl. at ¶¶ 95-96. Plaintiff-Relators also assert in their Fifth Claim for unjust enrichment:

> In seeking and receiving indirect cost recoveries
> for the at-issue . . . grants that were calculated
> based on the improper application of the ONPRC F&A
> Rate; by improperly charging costs for the non-
> ONPRC programs portion of Building #637 to the
> ONPRC P51 grant. . . ; and by charging an OCA to
> the ONPRC, OHSU received money from the Government
> to which it was not entitled and therefore was
> unjustly enriched. The circumstances of these
> payments are such that, in equity and good
> conscience, OHSU should not retain these payments,
> the amount of which is to be determined at trial.
>
> The Government conferred, and OHSU accepted,
> monies under such circumstances that in equity and
> good conscience OHSU should not be permitted to
> retain. It would be inequitable, and OHSU would
> be unjustly enriched, if OHSU was permitted to
> retain the funds that belong to the Government.

Compl. at ¶¶ 101-02.

Defendant asserts the Court should dismiss Plaintiff-Relators' Fourth and Fifth Claims because those claims are based on and governed by the express contracts alleged by Plaintiff-Relators. Defendant notes courts have rejected implied- and

14 - OPINION AND ORDER

quasi-contract claims when an enforceable, express contract governs the subject matter of the dispute and defines the rights of the parties. *See, e.g., Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016)("As a matter of law, a quasi-contract action for unjust enrichment does not lie [when], as here, express binding agreements exist and define the parties' rights." (internal quotation marks and alteration omitted)); *U.S. ex rel. Westinghouse Elec. Supply Co. v. Ahearn*, 231 F.2d 353, 356 (9th Cir. 1955)("The terms of the express contract control. There cannot be an implied contract either in law or in fact contrary in terms to a controlling express contract."); *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1035 (D. Or. 2012) (dismissing unjust-enrichment claim "because a valid contract — the mortgage — covers the services at issue" and the defendant "expressly admitted being party to the contract"); *Prestige Homes Real Estate Co. v. Hanson*, 951 P.2d 193, 195 (Or. App. 1997) ("[T]here cannot be a valid legally enforceable contract and an implied contract covering the same services.").

Plaintiff-Relators assert in their Response that courts permit parties to plead quasi- or implied-contract claims in the alternative to FCA claims.

As Defendant notes, however, courts have allowed limited pleading of equitable claims in the alternative to FCA or express-contract claims when the equitable claims are alleged to

15 - OPINION AND ORDER

have arisen from provisions in an express contract. For example, in *United States v. Savannah River Nuclear Solutions, LLC,* the United States filed a complaint against two government contractors and asserted three claims for violation of the FCA and claims for common-law breach of contract, unjust enrichment, and payment by mistake. No. 1:16-cv-00825-JMC, 2016 WL 7104823, at *1 (D.S.C. Dec. 6, 2016). The defendants filed a motion to dismiss all of the government's claims for failure to state a claim. The court held the government had stated claims for violation of the FCA and for breach of contract. The court, however, agreed with the defendants' assertion that the government could not bring claims for unjust enrichment and payment by mistake "the face of an express contract that governs the conduct underlying the allegations." *Id.*, at *27. Although the government asserted it brought its claims for unjust enrichment and payment by mistake in the alternative to its FCA and breach-of-contract claims, the court explained:

> A plaintiff may not recover on a claim that is quasicontractual in nature in the face of an express contract that governs the matter under dispute. *See Boldt Co. v. Thomason Elec.*, 820 F. Supp. 2d 703, 707 (D.S.C. 2007)("While parties are permitted . . . to pursue quasi-contractual claims when there is no valid contract between the parties, or there is some question as to whether the contract is enforceable or applies to the dispute, when the parties agree . . . that a valid and enforceable contract exists which covers the dispute between them, such a claim is superfluous."); *Swanson v. Stratos*, 564 S.E.2d 117 (S.C. 2002)("If the tasks the plaintiff is seeking

16 - OPINION AND ORDER

compensation for under a quantum meruit theory are encompassed within the terms of an express contract which has not been abandoned or rescinded, the plaintiff may not recover under quantum meruit."). Furthermore, when there is no dispute that an express contract covers the issue and the parties merely disagree regarding the interpretation of the contract, the plaintiff may not maintain the quasicontractual claim even on an alternative basis. This rule applies regardless whether the defendant is a party to the contract.

Id., at *26 (citations omitted). The court noted the government alleged in its complaint that the express contract at issue governed its equitable claims.

> Indeed, [defendant] FFS could only have been enriched unjustly and payments to [both defendants] could only have been mistaken if the . . . contract provided that the [Department of Energy] was not required to cover the costs at issue. . . . Thus, . . . the Government has alleged the existence of an enforceable contract that covers the issues underlying its claims for unjust enrichment and payment by mistake as to both [of the defendants], and the Government therefore may not pursue the quasicontractual claims against them.

Id. (citations omitted). The court pointed out that

> [t]he fact that the Federal Rules of Civil Procedure permit a plaintiff to plead alternative inconsistent theories of liability does not alter the analysis: the undisputed allegation of an enforceable contract that covers the underlying issues forces the court to conclude that these two counts of the complaint fail to state a claim for which relief could be granted. See Kellogg Brown & Root Servs., 800 F. Supp. 2d at 160 (citing United States v. Sci. Applications Int'l Corp., 555 F. Supp. 2d 40, 59 (D.D.C. 2008); United States ex rel. Purcell v. MWI Corp., 254 F. Supp. 2d 69, 79 (D.D.C. 2003)). The fact that the federal government retains the right to raise common law claims like any other plaintiff . . .

17 - OPINION AND ORDER

>                does not mean that the government is entitled to
>                proceed with common law claims where private
>                plaintiffs would be barred.

*Id.*, at \*27. Thus, the court ultimately granted the defendants' motion to dismiss the government's claims for unjust enrichment and payment by mistake.

Here, as in *Savannah,* the basis for Plaintiff-Relators' claims for payment by mistake and unjust enrichment arise from the express contracts the government alleged in its Complaint. In fact, Defendant could only have been enriched unjustly and payments to Defendant could only have been mistaken if the express contracts did not set out specific rates and methods for charging costs. Indeed, Plaintiff-Relators incorporate by reference all of the allegations in the Complaint relating to the express contracts that form the basis for their FCA claims against Defendant and do not allege any other basis for unjust enrichment or payment by mistake. In addition, Plaintiff-Relators do not allege the express contracts are invalid or nonbinding. The Court, therefore, concludes Plaintiff-Relators have not stated claims for unjust enrichment or payment by mistake.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff-Relators' claims for unjust enrichment and payment by mistake for failure to state a claim.

## III. Leave to Amend

Plaintiff-Relators assert in their Response to Defendant's Motion to Dismiss that if the Court grants Defendant's Motion to Dismiss Plaintiff-Relators' FCA claims on the ground that Defendant is not subject to liability under the FCA, Plaintiff-Relators should be allowed to file an Amended Complaint-in-Intervention to assert FCA claims against unidentified individuals in their personal capacity.

Defendant, in turn, asserts the Court, in the exercise of its discretion, should deny Plaintiff-Relators' request to amend their Complaint to assert claims against unidentified individuals because the request comes almost four years after Doughty filed the original Complaint.

The record reflects the government was aware of and began to investigate Doughty's Complaint no later than October 2013, and the Supreme Court's decision in *Stevens* was entered in 2000. Accordingly, the government has had nearly four years to investigate and to make allegations against individuals in their personal capacity in this matter, but has not done so. *See, e.g., Kourtis v. Cameron*, 385 F. App'x 863, 867 (9th Cir. 2009) ("The district court did not abuse its discretion [when it] denied [the plaintiffs'] motion for leave to file a second amended complaint adding new defendants almost four years after those potential defendants should have been known to [the

plaintiffs]."). The Court agrees and, in the exercise of its discretion, declines to grant Plaintiff-Relators' request to file an Amended Complaint to assert FCA claims against unidentified individuals in their personal capacity.

The Court, however, grants leave to Plaintiff-Relators to file **no later than April 28, 2017,** an Amended Complaint to the extent that they can allege claims for unjust enrichment and/or payment by mistake that do not arise from the express contracts.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion (#54) to Dismiss. The Court also **GRANTS** Plaintiff-Relators leave to file **no later than April 28, 2017,** an Amended Complaint to the extent that they can allege claims for unjust enrichment and/or payment by mistake that do not arise from the express contracts at issue.

IT IS SO ORDERED.

DATED this 11th day of April, 2017.

_____
ANNA J. BROWN
United States District Judge